UNITED STATES of America,
Plaintiff–Appellant,

v.

George Robert BELL, Defendant–
Appellee.

No. 93–5158.

United States Court of Appeals,
Fourth Circuit.

Argued July 15, 1993.

Decided Sept. 13, 1993.

Gregory Welsh, Asst. U.S. Atty./Chief, Criminal Div., Baltimore, MD, argued (Richard D. Bennett, U.S. Atty., on brief), for plaintiff-appellant.

Jean A. Garner, Garner & Walls, Laurel, MD, argued (C. Michael Walls, on brief), for defendant-appellee.

Before WILKINS, NIEMEYER, and HAMILTON, Circuit Judges.

## OPINION

WILKINS, Circuit Judge:

In an earlier opinion, a panel of this court vacated the sentence of George Robert Bell and remanded for resentencing within the guideline range of 87–108 months imprisonment. *See* United States Sentencing Commission, *Guidelines Manual*, (Nov. 1989); *United States v. Bell*, 974 F.2d 537 (4th Cir.1992) (*Bell I* ). On remand, rather than follow the mandate, the district court vacated Bell's guilty plea to sexual exploitation of children, *see* 18 U.S.C.A. § 2251(a) (West Supp.1993), and dismissed the indictment. Because the district court was in error, we reverse, reinstate Bell's conviction, and remand for resentencing.

## I.

Following indictment on multiple counts of sexual exploitation of children, Bell pled guilty to a single count of using a minor to engage in sexually explicit conduct for the purpose of making a visual depiction of that conduct. The facts supporting his plea arose during a camping trip on which Bell took his daughter, age 13, and three daughters of a family friend, ages 12, 8, and 7. Bell and his daughter left their home in Maryland and traveled to Pennsylvania where they picked up the other children. During the trip, Bell placed a video camera in his camper in a position to record the children while they changed their clothes. Bell instructed them to take off their clothes, sit in certain locations, and to "examine" themselves for the presence of ticks by spreading and examining

their vaginas. At one point, Bell repositioned the camera so that the genitals of one child were the direct focus of the recording. At other points, Bell himself examined the children for ticks and rubbed lotion on them. Noticing the video camera, one of the children asked Bell if it was recording; Bell falsely assured her that it was not. At the end of the camping trip, Bell returned to his home in Maryland with the videotape. The circumstances leading to Bell's arrest and indictment are recounted in the earlier opinion:

> Several months later, [after the camping trip] Montgomery County police were called to an elementary school in Rockville, Maryland, to investigate a complaint of child sexual abuse. A seven year old female student told police detectives that she had been taken by "Uncle George" to his residence in Salisbury, where he had taken photographs of her in the nude. Further investigation revealed that "Uncle George" was George Bell, and police obtained a warrant to search Bell's home. During the ensuing search police seized a number of videotapes containing scenes of young girls posing in the nude under Bell's direction. One of those tapes included the scenes of the girls "checking for ticks" in the camper [in Pennsylvania].

*Id.* at 538. Bell ultimately pled guilty to one count of violating § 2251(a).

At the sentencing hearing, the district court assigned Bell an adjusted offense level of 28.[1] Based on Bell's prior convictions for promotion and distribution of child pornography and for sexual abuse of a child, his Criminal History Category was III. The district court, however, departed downward to Category II on the ground that Bell demonstrated "little or no likelihood of recidivism." *Id.* (internal quotation marks omitted). This yielded a guideline range of 87–108 months imprisonment. The district court departed from this range and imposed

---

1. The guideline applicable to violations of 18 U.S.C.A. § 2251(a) assigns a base offense level of 25. United States Sentencing Commission, *Guidelines Manual*, § 2G2.1 (Nov. 1989). This guideline requires increases depending on the age of the victim. Because two of Bell's victims were under the age of 12, two levels were added for two victims. *See* U.S.S.G. § 2G2.1(b)(1). The guideline further requires that each minor

"be treated as a separate victim." U.S.S.G. § 2G2.1, comment. (n. 1); *see also* U.S.S.G. § 3D1.2. Thus, application of this rule, along with use of the multiple-count rules of Chapter 3, *see* U.S.S.G. § 3D1.4, resulted in an offense level of 30. Bell received a two-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), resulting in an adjusted offense level of 28.

a sentence of 12 months imprisonment, giving as its reason the impact Bell's incarceration would have on his family.

The Government appealed the departure based on the extraordinary family circumstance.[2] The *Bell I* panel reversed, stating that because Bell is the father in a traditional two-parent family, his "circumstances [were] even less 'extraordinary' than that of a single mother." *Id.* at 539. The panel further noted that Bell had "'shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts spousal and parental relationships,' and that simply is not a sufficient basis for a departure." *Id.* at 539 (quoting *United States v. Daly*, 883 F.2d 313, 319 (4th Cir. 1989)). The sentence was vacated and the case remanded for resentencing. The instructions to the district court were explicit: "We vacate the sentence and remand for resentencing within the range of 87–108 months." *Id.* at 537.

On remand, the district court held a conference with counsel during which the court sua sponte opined that a departure would be warranted on the ground that the children were not aware of Bell's actions until notified by law enforcement authorities and therefore did not become victims until that time. The district court reasoned that this delayed victimization constituted a mitigating factor not adequately considered by the Sentencing Commission in promulgating U.S.S.G. § 2G2.1, and therefore a departure on this basis was proper. During a second conference, the district court, again sua sponte, suggested that § 2251(a) contained an element of direct or implied commercial purpose for which the Government had not provided a sufficient factual basis to support Bell's plea of guilty. Relying on this reasoning, the district court then invited Bell to file a motion to withdraw his guilty plea with a companion motion to dismiss the indictment.

Although no motions were made, at the sentencing hearing the district court vacated the judgment and dismissed the indictment on the ground stated above. The district court also declared that if its decision to vacate were reversed, it would depart again and sentence Bell to 12 months imprisonment on the ground that the children did not become immediate victims and therefore suffered no harm until apprised of Bell's actions by law enforcement authorities. Pursuant to 18 U.S.C.A. § 3731 (West Supp.1993), the Government appealed.

## II.

### A.

Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is "controlling as to matters within its compass." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939). Indeed, it is indisputable that a lower court generally is "bound to carry the mandate of the upper court into execution and [may] not consider the questions which the mandate laid at rest." *Id.* Because this "mandate rule" is merely a "specific application of the law of the case doctrine," in the absence of exceptional circumstances, it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court. *United States v. Bell*, 988 F.2d 247, 251 (1st Cir.1993). In addition, the rule forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court. *See id.* at 250.[3] Thus, when this court remands for further proceedings, a district court must, except in rare circumstances, "'implement both the letter and spirit of the ... mandate, taking into account [our] opinion and the circumstances it embraces.'" *Id.* (quoting *United States v. Kikumura*, 947 F.2d 72, 76

---

**2.** The Government elected to forego appeal on the Criminal History Category departure. We agree with the panel in *Bell I* that "we in no way suggest that the ground for the ... departure ... represented a correct application of the Guidelines." *Bell I*, 974 F.2d at 538 n. *.

**3.** We acknowledge that our research has disclosed the opinion in *United States v. Smith*, 930

F.2d 1450, 1456 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991), which appears to announce a different rule. In addition, in remanding for resentencing the Court of Appeals for the Second Circuit wrote in *United States v. Sanchez Solis*, 882 F.2d 693, 699 (2d Cir.1989), that the district court should not consider on remand whether the government had waived the argument that the defendant's

(3d Cir.1991)). However, to the extent that the mandate of the appellate court instructs or permits reconsideration of sentencing issues on remand, the district court may consider the issue de novo, entertaining "any relevant evidence on that issue that it could have heard at the first hearing." *United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir.1992).

We have previously recognized that these well-established rules apply when this court remands for resentencing. For example, in *United States v. Apple*, 962 F.2d 335, 336 (4th Cir.1992), the first review of Apple's case involved an evidentiary issue and the applicability of a sentencing enhancement for possession of a weapon during the commission of a narcotics offense. A panel of this court directed the district court to address these points on remand. At resentencing, Apple urged the district court to consider suggested mitigating circumstances that had occurred since the first sentencing hearing. The district court refused, deeming itself "constrained ... by our remand instructions and by Fed.R.Crim.P. 35, to limit its reconsideration of the sentence[ ] to that alone which we indicated might have been incorrect." [4] *Id.* at 337. Similar to the mandate in *Apple*, the mandate in *Bell I* contained precise and unambiguous instructions, and directed the court to do only one thing on remand—impose a sentence within the specified guideline range of 87–108 months imprisonment.

### B.

■ The mandate rule, however, is not without exception when a lower court is faced with extraordinary circumstances. Even though the mandate of an appellate court may "not contemplate resurrecting an issue on remand, the trial court may still possess

some limited discretion to reopen the issue in very special situations." *Bell*, 988 F.2d at 250–51. These circumstances are: (1) a "show[ing] that controlling legal authority has changed dramatically; [ (2) that] significant new evidence, not earlier obtainable in the exercise of due diligence[, has come to light]; or ... [ (3) ] that a blatant error in the prior decision will, if uncorrected, result in a serious injustice." *Id.* at 251; *accord Sejman v. Warner–Lambert Co.*, 845 F.2d 66, 69 (4th Cir.1988). Applying the last of these circumstances, the district court found that § 2251(a) contained an element of direct or implied commercial purpose for which the Government failed to offer proof during the proffer at Bell's guilty plea proceeding, and thus a serious injustice would result if Bell's plea were permitted to stand.

■ To resolve the issue of whether § 2251(a) incorporates an element of direct or implied commercial purpose, we turn to the statute. Section 2251(a) provides:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C.A. § 2251(a). For the purposes of the statute, a "minor" includes "any person

---

sentence should have been increased for obstruction of justice, U.S.S.G. § 3C1.1, but should consider any new matter presented by either of the parties in the interest of fairness. This approach was understandable in view of the fact that, having erroneously concluded that the sentencing guidelines were unconstitutional, the district court had not sentenced the defendant under them during the first sentencing hearing. *Sanchez Solis*, 882 F.2d at 697–99.

**4.** Federal Rule of Criminal Procedure 35(a) provides:

(a) Correction of a Sentence on Remand. The court shall correct a sentence that is determined on appeal under 18 U.S.C. 3742 to have been imposed in violation of law, to have been imposed as a result of an incorrect application of the sentencing guidelines, or to be unreasonable, upon remand of the case to the court—

(1) for imposition of a sentence in accord with the findings of the court of appeals; or

(2) for further sentencing proceedings if, after such proceedings, the court determines that the original sentence was incorrect.

under the age of eighteen years," and "sexually explicit conduct" includes the "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C.A. § 2256(1), (2)(E) (West Supp.1993). The proper interpretation of § 2251(a) must begin with the plain language of the statute, and absent ambiguity or a clearly expressed legislative intent to the contrary, the statute must be given its plain meaning. *See United States v. Sheek*, 990 F.2d 150, 152 (4th Cir.1993). We review questions of statutory interpretation de novo. *United States v. Hall*, 972 F.2d 67, 69 (4th Cir.1992).

Section 2251 plainly "makes illegal the inducement of children into sexual conduct for the purpose of creating visual depictions of that conduct" and transportation of the depictions across state lines. *United States v. Smith*, 795 F.2d 841, 845 (9th Cir.1986), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987).[5] Although an earlier version of the statute did include an element of commercial purpose, the amended version under which Bell was convicted does not contain the requirement. *See id.* Finding no ambiguity in § 2251(a), nor a clearly expressed legislative intent to the contrary, we conclude that the statute prohibits, inter alia, the use of a person under the age of 18 to produce a videotape of sexually explicit conduct when the defendant knows or has reason to know that the videotape will or has been transported across state lines. Contrary to the reading by the district court, we find no element of direct or implied commercial purpose in the statute.[6] Thus, the basis for the finding of the district court that exceptional circumstances justified non-compliance with the mandate in *Bell I* was erroneous. Because, the district court erred in revisiting Bell's guilty plea, we reinstate his conviction.

## III.

■ In addition to its ruling with respect to Bell's guilty plea, the district court stated that if faced with resentencing Bell, it would again impose a sentence of 12 months imprisonment because the victims were not aware that they were being videotaped until sometime after the events occurred.[7] The district court opined that "but for law enforcement authority's intervention in connection with other events ... the so-called victims would likely never have known of any untoward activity." The district court concluded that there was no harm suffered and that Bell's conduct fell short of the "sexual abuse, molestation, or the exploitation that is codified in the charging statute." We do not hesitate to reject this as a basis for departure. It inherently—and improperly—rejects the belief expressed by Congress in enacting § 2251(a) that sexual exploitation of a minor in order to produce visual depictions constitutes a "form[ ] of child abuse." S.Rep. No. 438, 95th Cong., 2d Sess. 7 (1977), *reprinted in* 1978 U.S.C.C.A.N. 40, 44. The facts, fully recited in *Bell I*, demonstrate that Bell victimized the female children. While filming with a video camera, he actively directed the children, instructing them to touch themselves in sexually explicit ways. He helped them to disrobe, and applied lotion to their backs, buttocks, and chests. He moved his face in close proximity to at least one child's genital area. Whether the children were aware that Bell was videotaping them is wholly irrelevant to sentencing considerations. Thus, it may not be used as a basis to depart from the mandate of *Bell I*.

## IV.

The Government has moved for reassignment of this case to a different district judge

---

**5.** At least two other circuits have construed 18 U.S.C.A. § 2252(a) (West Supp.1993), a companion statute to § 2251(a) that prohibits interstate transportation or shipping of visual depictions of minors engaged in sexually explicit conduct, to hold that it does not contain an element of commercial distribution. *See United States v. Miller*, 776 F.2d 978, 979 (11th Cir.1985) (per curiam), *cert. denied*, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986); *United States v. Bevacqua*, 864 F.2d 19, 20 (3d Cir.1988).

**6.** Neither party disputes that, in the absence of an element of commercial purpose, the stipulated facts establish a violation of § 2251(a).

**7.** It appears that the district court attempted to withdraw this statement after the Government objected, reserving the opportunity to consider a downward departure on this basis in the event this court directed resentencing. Although it is unclear from the record whether this issue is properly before us, we nevertheless address it to provide guidance to the district court on remand.

for resentencing, contending that the impartiality of the district judge has been compromised by his disregard for the sentencing guidelines and his stated intent to again depart in order to impose a sentence in line with his perception of the seriousness of Bell's criminal conduct. While we deny the motion, we acknowledge that we find very puzzling the actions of the district court. The mandate of *Bell I* was clear and precise. We must assume that the district court, given the benefit of this opinion which corrects its misunderstandings about the elements of § 2251(a) and the victimization issue, will now proceed in accordance with the mandate of this court, unless one of the limited exceptions to the mandate rule applies.

*REVERSED AND REMANDED.*